IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALEX CICCOTELLI, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF THE** |
| DISCOVERY, INC., ROBERT J. MIRON, | : **SECURITIES EXCHANGE ACT OF 1934** |
| ROBERT R. BECK, ROBERT R. | : |
| BENNETT, PAUL A. GOULD, ROBERT L. | : |
| JOHNSON, KENNETH W. LOWE, JOHN C. | : |
| MALONE, STEVEN A. MIRON, DANIEL | : |
| E. SANCHEZ, SUSAN M. SWAIN, J. | : |
| DAVID WARGO, and DAVID M. ZASLAV, | : |
| | : |
| Defendants. | : |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1. On May 17, 2021, Discovery, Inc. ("Discovery" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with AT&T Inc. ("AT&T"), Magallenes, Inc. ("Spinco"), and Drake Subsidiary, Inc. ("Merger Sub") (the "Proposed Merger").

2. On November 18, 2021, defendants filed a S-4 Registration Statement (the "Registration Statement") with the U.S. Securities and Exchange Commission (the "SEC").

3. As alleged herein, the Registration Statement fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

5. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper under 15 U.S.C. § 78aa because the Registration Statement, which plaintiff alleges to be materially false and misleading, was transmitted by defendants into this District, including to plaintiff, who resides in this District. *See, e.g., Wojtunik v. Kealy*, 2003 WL 22006240, at *5-6 (E.D. Pa. Aug. 26, 2003).

## THE PARTIES

7. Plaintiff is and has been continuously throughout all relevant times the owner of Discovery common stock. Plaintiff resides in this District.

8. Defendant Discovery is a Delaware corporation. Discovery's common stock is traded on the NASDAQ under the ticker symbol "DISCA."

9. Defendant Robert J. Miron is Chairman of the Board of Directors of Discovery (the "Board").

10. Defendant Robert R. Beck is a member of the Board.

11. Defendant Robert R. Bennett is a member of the Board.

12. Defendant Paul A. Gould is a member of the Board.

13. Defendant Robert L. Johnson is a member of the Board.

14. Defendant Kenneth W. Lowe is a member of the Board.

15. Defendant John C. Malone is a member of the Board.

16. Defendant Steven A. Miron is a member of the Board.

17. Defendant Daniel E. Sanchez is a member of the Board.

18. Defendant Susan M. Swain is a member of the Board.

19. Defendant J. David Wargo is a member of the Board.

20. Defendant David M. Zaslav is a member of the Board.

21. Defendants identified in ¶¶ 9-20 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

22. Available in over 220 countries and territories and nearly 50 languages, Discovery is a platform innovator, reaching viewers on all screens, including TV Everywhere products such as the GO portfolio of apps; direct-to-consumer streaming services such as discovery+, Food Network Kitchen, and MotorTrend OnDemand; digital-first and social content from Group Nine Media; a landmark natural history and factual content partnership with the BBC; and a strategic alliance with PGA TOUR to create the international home of golf.

23. On May 17, 2021, Discovery's Board caused the Company to enter into the Merger Agreement.

24. The press release announcing the Proposed Merger provides as follows:

AT&T Inc. (NYSE:T) and Discovery, Inc. (NASDAQ: DISCA, DISCB, DISCK) today announced a definitive agreement to combine WarnerMedia's premium entertainment, sports and news assets with Discovery's leading nonfiction and international entertainment and sports businesses to create a premier, standalone global entertainment company.

Under the terms of the agreement, which is structured as an all-stock, Reverse Morris Trust transaction, AT&T would receive $43 billion (subject to adjustment)

in a combination of cash, debt securities, and WarnerMedia's retention of certain debt, and AT&T's shareholders would receive stock representing 71% of the new company; Discovery shareholders would own 29% of the new company. The Boards of Directors of both AT&T and Discovery have approved the transaction.

The companies expect the transaction will create substantial value for AT&T and Discovery shareholders by:

- Bringing together the strongest leadership teams, content creators, and high-quality series and film libraries in the media business.

- Accelerating both companies' plans for leading direct-to-consumer (DTC) streaming services for global consumers.

- Uniting complementary and diverse content strengths with broad appeal — WarnerMedia's robust studios and portfolio of iconic scripted entertainment, animation, news and sports with Discovery's global leadership in unscripted and international entertainment and sports.

- Forming a new company that will have significant scale and investment resources with projected 2023 Revenue of approximately $52 billion, adjusted EBITDA of approximately $14 billion, and an industry leading Free Cash Flow conversion rate of approximately 60%.

- Creating at least $3 billion in expected cost synergies annually for the new company to increase its investment in content and digital innovation, and to scale its global DTC business.

For AT&T and its shareholders, this transaction provides an opportunity to unlock value in its media assets and to better position the media business to take advantage of the attractive DTC trends in the industry. Additionally, the transaction allows the company to better capitalize on the longer-term demand for connectivity:

  - AT&T shareholders participate in a leading media company with a broad global portfolio of brands, tremendous DTC potential and strengthened combined assets.

  - Creates substantial value opportunity for AT&T shareholders through stepped-up investment in growth areas – mobile and fixed broadband.

  - Capital structure improvement after closing will position AT&T as one of the best capitalized 5G and fiber broadband companies in the United States.

  - Results in two independent companies – one broadband connectivity and the other media – to sharpen the investment focus and attract the best

investor base for each company.

### A Stronger Competitor in Global Streaming

The new company will compete globally in the fast-growing direct-to-consumer business — bringing compelling content to DTC subscribers across its portfolio, including HBO Max and the recently launched discovery+. The transaction will combine WarnerMedia's storied content library of popular and valuable IP with Discovery's global footprint, trove of local-language content and deep regional expertise across more than 200 countries and territories. The new company will be able to invest in more original content for its streaming services, enhance the programming options across its global linear pay TV and broadcast channels, and offer more innovative video experiences and consumer choices.

### Uniting Dynamic, Enduring and Historic Brands and Franchises

The "pure play" content company will own one of the deepest libraries in the world with nearly 200,000 hours of iconic programming and will bring together over 100 of the most cherished, popular and trusted brands in the world under one global portfolio, including: HBO, Warner Bros., Discovery, DC Comics, CNN, Cartoon Network, HGTV, Food Network, the Turner Networks, TNT, TBS, Eurosport, Magnolia, TLC, Animal Planet, ID and many more.

The new company will be able to increase investment and capabilities in original content and programming; create more opportunity for under-represented storytellers and independent creators; serve customers with innovative video experiences and points of engagement; and propel more investment in high-quality, family-friendly nonfiction content.

### Leadership, Governance and Structure

The companies announced that Discovery President and CEO David Zaslav will lead the proposed new company with a best-in-class management team and top operational and creative leadership from both companies.

Discovery's current multiple classes of shares will be consolidated to a single class with one vote per share.

The new company's Board of Directors will consist of 13 members, 7 initially appointed by AT&T, including the chairperson of the board; Discovery will initially appoint 6 members, including CEO David Zaslav.

### Executive Commentary

**John Stankey Said:**

"This agreement unites two entertainment leaders with complementary content strengths and positions the new company to be one of the leading global direct-to-consumer streaming platforms. It will support the fantastic growth and international launch of HBO Max with Discovery's global footprint and create efficiencies which can be re-invested in producing more great content to give consumers what they want. For AT&T shareholders, this is an opportunity to unlock value and be one of the best capitalized broadband companies, focused on investing in 5G and fiber to meet substantial, long-term demand for connectivity. AT&T shareholders will retain their stake in our leading communications company that comes with an attractive dividend. Plus, they will get a stake in the new company, a global media leader that can build one of the top streaming platforms in the world."

**David Zaslav Said:**

"During my many conversations with John, we always come back to the same simple and powerful strategic principle: these assets are better and more valuable together. It is super exciting to combine such historic brands, world class journalism and iconic franchises under one roof and unlock so much value and opportunity. With a library of cherished IP, dynamite management teams and global expertise in every market in the world, we believe everyone wins...consumers with more diverse choices, talent and storytellers with more resources and compelling pathways to larger audiences, and shareholders with a globally scaled growth company committed to a strong balance sheet that is better positioned to compete with the world's largest streamers. We will build a new chapter together with the creative and talented WarnerMedia team and these incredible assets built on a nearly 100-year legacy of the most wonderful storytelling in the world. That will be our singular mission: to focus on telling the most amazing stories and have a ton of fun doing it."

**Transaction Highlights**

The combination will be executed through a Reverse Morris Trust, under which WarnerMedia will be spun or split off to AT&T's shareholders via dividend or through an exchange offer or a combination of both and simultaneously combined with Discovery. The transaction is expected to be tax-free to AT&T and AT&T's shareholders.

In connection with the spin-off or split-off of WarnerMedia, AT&T will receive $43 billion (subject to adjustment) in a combination of cash, debt securities and WarnerMedia's retention of certain debt. The new company expects to maintain investment grade rating and utilize the significant cash flow of the combined company to rapidly de-lever to approximately 3.0x within 24 months, and to target a new, longer term gross leverage target of 2.5x-3.0x. WarnerMedia has secured fully committed financing from

JPMorgan Chase Bank, N.A. and affiliates of Goldman Sachs & Co. LLC for the purposes of funding the distribution.

The transaction is anticipated to close in mid-2022, subject to approval by Discovery shareholders and customary closing conditions, including receipt of regulatory approvals. No vote is required by AT&T shareholders. Agreements are in place with Dr. John Malone and Advance to vote in favor of the transaction.

**AT&T Preliminary Financial Profile Following Completion of the Transaction; Focused Total Return Strategy for Capital Allocation; After Close, Dividend Payout Ratio[1] Expected to be Low 40s%.**

After close and on a pro-forma basis, AT&T expects its remaining assets to produce the following financial trajectory from 2022 to 2024:

- Annual revenue growth: low single digits CAGR[2]

- Annual adjusted EBITDA[3] and adjusted EPS[4] growth: mid-single digits CAGR

- Significantly increased financial flexibility to drive returns to shareholders, including:

  - Expected increased capital investment for incremental investments in 5G and fiber broadband. The company expects annual capital expenditures of around $24 billion once the transaction closes. AT&T expects its 5G C-band network will cover 200 million people in the U.S. by year-end 2023. And the company plans to expand its fiber footprint to cover 30 million customer locations by year-end 2025.

- Significant debt reduction: Expect Net Debt to Adjusted EBITDA[5] in the 2.6x range after transaction closes and less than 2.5x by year end 2023.

  - Attractive dividend – resized to account for the distribution of WarnerMedia to AT&T shareholders. After close and subject to AT&T Board approval, AT&T expects an annual dividend payout ratio of 40% to 43% on anticipated free cash flow[1] of $20 billion plus.

  - The optionality to repurchase shares once Net Debt to Adjusted EBITDA is less than 2.5x.

**Advisors**

LionTree LLC and Goldman Sachs & Co. LLC served as financial advisors and Sullivan & Cromwell LLP served as legal advisor to AT&T.

Allen & Company LLC and J.P. Morgan Securities LLC served as financial advisors and Debevoise & Plimpton LLP served as legal advisor to Discovery. Perella Weinberg Partners and Wachtell Lipton, Rosen & Katz served as advisors to the Independent Directors of Discovery.

RBC Capital Markets served as financial advisors and Paul, Weiss, Rifkind, Wharton & Garrison LLP served as legal advisors to Advance.

25. On November 18, 2021, defendants filed the Registration Statement, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

26. The Registration Statement fails to disclose material information regarding Discovery's and WarnerMedia's financial projections, specifically: the line items underlying the financial projections.

Financial Analyses

27. The Registration Statement fails to disclose material information regarding the financial analyses conducted by Allen & Company LLC and J.P. Morgan Securities LLC ("Financial Advisors").

28. Regarding the Financial Advisors' Selected Public Companies Analyses, the Registration Statement fails to disclose the individual multiples for the companies utilized in the analyses.

29. Regarding the Financial Advisors' Discounted Cash Flow Analyses of Discovery, the Registration Statement fails to disclose: (i) unlevered free cash flows; (ii) the line items underlying unlevered free cash flows; (iii) the terminal values; and (iv) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized in the analyses.

30. Regarding the Financial Advisors' Discounted Cash Flow Analyses of WarnerMedia, the Registration Statement fails to disclose: (i) unlevered free cash flows; (ii) the line items underlying unlevered free cash flows; (iii) the terminal values; and (iv) the inputs and assumptions underlying the discount rates and perpetuity growth rates utilized in the analyses.

## COUNT I

**Claim Against the Individual Defendants and Discovery for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

31. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

32. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

33. Discovery is liable as the issuer of these statements.

34. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

35. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

36. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

37. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

38. The Registration Statement is an essential link in causing plaintiff to approve the Proposed Merger.

39. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

40. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

41. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of Discovery within the meaning of Section 20(a) of the Exchange Act as alleged herein.

43. Due to their positions as officers and/or directors of Discovery and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

46. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the Registration Statement.

47. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

48. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

49. These defendants are liable pursuant to Section 20(a) of the Exchange Act.

50. Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

  D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

  E. Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

  F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated: December 21, 2021    **GRABAR LAW OFFICE**

        By: _/s/ Joshua H. Grabar_
        Joshua H. Grabar (#82525)
        One Liberty Place
        1650 Market Street, Suite 3600
        Philadelphia, PA 19103
        267-507-6085
        jgrabar@grabarlaw.com

        *Counsel for Plaintiff*